IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:12-CV-237-D

| | |
|---|---|
| MICHELE SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff challenges the final decision of defendant Acting Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") benefits on the grounds that she is not disabled. The case is before the court on the parties' motions for judgment on the pleadings (D.E. 21, 23). Both filed memoranda in support of their respective motions. (D.E. 22, 24). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (D.E. 25). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the Commissioner's final decision be affirmed.

I.  BACKGROUND

   A.  Case History

Plaintiff filed an application for SSI benefits on 29 May 2009[1] alleging the onset of disability on 2 May 2003. Transcript of Proceedings ("Tr.") 14. The application was denied initially (Tr. 14, 78) and upon reconsideration (Tr. 14, 79), and a request for hearing was timely

---

[1] The Application Summary for SSI included in the record states that plaintiff completed her application on 9 June 2009. Tr. 152.

filed (Tr. 14, 90). On 10 January 2011, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 32-69. The ALJ issued a decision denying plaintiff's claim on 18 March 2011. Tr. 11-31. Plaintiff timely requested review by the Appeals Council. Tr. 9. The Appeals Council denied the request for review on 28 August 2012. Tr. 1-6. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 416.1481. Plaintiff commenced this proceeding for judicial review on 11 October 2012, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See In Forma Pauperis* Mot. (D.E. 1), Order Allowing Mot. (D.E. 4), Compl. (D.E. 5)).

B.  **Standards for Disability**

The Social Security Act ("Act") defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). "[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"] and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 416.920(a)(4)(i)-(iv).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments must be considered throughout the disability determination process. *Id.*

### C. Findings of the ALJ

Plaintiff was 31 years old on the date the application for SSI benefits was filed and 32 years old on the date of the hearing. *See* Tr. 14, 25 ¶ 6. She testified that she completed eighth grade. Tr. 38; *see also* Tr. 25 ¶ 7 (finding plaintiff to have a limited education); 20 C.F.R. § 416.964(b)(3) (defining limited education generally as the seventh through eleventh grade level of formal education).

Applying the five-step analysis of 20 C.F.R. § 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since 29 May 2009, her application date. Tr. 16 ¶ 1. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations, 20 C.F.R. § 416.920(c): right eye pain with a history of resolved uveitis; irritable bowel syndrome ("IBS"); chronic headaches; chronic pain and fatigue with low titer positive ANA[2]; fibromyalgia; depression; and "rule out borderline intellectual functioning." Tr. 16 ¶ 2. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals one of the listings. Tr. 16 ¶ 3.

The ALJ next determined that plaintiff had the RFC to perform light work,[3] subject to the following limitations:

> [T]he claimant must avoid concentrated exposure to hazards, and moderate exposure to noise. The claimant cannot perform repetitive reaching overhead. In

---

[2] "ANA" is an acronym for "antinuclear antibodies," which are "substances produced by the immune system that attack the body's own tissues." *See, e.g.*, Def. of "Antinuclear Antibody Panel," Medline Plus, U.S. Nat'l Library of Medicine, http://www nlm nih.gov/medlineplus/ency/article/003535 htm (last visited 11 Oct. 2013). A "low titer positive ANA" indicates the possible presence of an autoimmune disorder. *Id*.

[3] Light work involves lifting up to 20 pounds occasionally and lifting and carrying 10 pounds frequently. *See* 20 C.F.R. § 416.967(b); *see also Dictionary of Occupational Titles* ("DOT") (U.S. Dep't of Labor 4th ed. rev. 1991), app. C § IV, def. of "L-Light Work," http://www.oalj.dol.gov/libdot.htm (last visited 11 Oct. 2013). The term "light work" and the terms for the other levels of physical exertion as used in the Regulations have the same meaning as in the DOT. 20 C.F.R. § 416.967.

addition, the claimant is limited to simple routine repetitive tasks ["SRRT's"], with no public contact, and only routine changes in the work environment.

Tr. 18 ¶ 4. At step four, the ALJ found that plaintiff had no past relevant work. Tr. 25 ¶ 5. At step five, the ALJ accepted the testimony of a vocational expert ("VE") and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of cleaner/housekeeper, garment sorter, and router. Tr. 26 ¶ 9. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 26 ¶ 10.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See, e.g., Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales,* 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent

evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano,* 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### B. Overview of Plaintiff's Contentions

Plaintiff contends that the ALJ erred by: (1) posing an incomplete hypothetical to the VE; (2) improperly rejecting the opinion of plaintiff's treating rheumatologist, Robert T. Keenan, M.D.; (3) failing to develop the record regarding the severe impairment of "rule out borderline intellectual functioning"; and (4) failing to obtain a medical source statement ("MSS") from plaintiff's treating neurologist, William Deans, M.D. Each ground is examined in turn below.

### C. ALJ's Alleged Failure to Pose a Complete Hypothetical to the VE

Plaintiff argues that the ALJ improperly omitted from the hypothetical to the VE several impairments and limitations she alleges. The contention has no merit.

A hypothetical question is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005). The hypothetical the ALJ posed here meets this standard. It provided as follows:

> [T]his individual has the [RFC] to perform light work, lifting up to 20 pounds occasionally, up to 10 pounds frequently. They should avoid concentrated

exposure to hazards. There should be no repetitive reaching overhead. Moderate exposure to noise, only occasional fine acuity.

The work should be unskilled, simple, routine, repetitive in nature. There should be no contact with the public for the essential functions of the position, only routine changes in the work environment.

Tr. 65. As required, this hypothetical essentially restates the ALJ's RFC determination, and substantial evidence supports that determination, as other portions of the analysis herein substantiates.

Nonetheless, plaintiff contends that the hypothetical is erroneous because it does not limit plaintiff to a low-stress environment. However, this particular limitation was not one that the ALJ found plaintiff to have. While plaintiff references the opinions of two state agency psychological consultants who found plaintiff to have this limitation, it is clear that the ALJ did not adopt this aspect of those opinions. Specifically, while the ALJ stated that she gave "some weight" to the consultants' opinions, it was only to extent that they were compatible with her RFC determination. Tr. 21 ¶ 4. Further, immediately after summarizing the consultants' opinions on plaintiffs' limitations, the ALJ explained why she found plaintiff to be more capable of dealing with a more stressful work environment than these opinions would indicate:

> [T]he claimant is apparently able to take care of three young children at home (two of whom are on disability), which can be quite demanding both physically and emotionally, without any particular assistance, and the medical evidence indicates that her treatment for depression has been very successful.

Tr. 21 ¶ 4. These findings are supported by substantial evidence. *See, e.g.,* Tr. 38, 47-48, 277, 336, 424, 428, 466. Moreover, the RFC includes limitations relating to plaintiff's ability to handle workplace stress, namely, performance of only SRRT's, no contact with the public, and only routine changes in the work environment.

Plaintiff next contends that the ALJ erred by failing to mention to the VE that plaintiff experienced migraines "that [caused] excruciating, all-day pain twice a week." (Pl.'s Mem. 4). Plaintiff's argument has no merit.

As an initial matter, the ALJ was not required to describe every symptom of plaintiff's impairments to the VE. "The Fourth Circuit has made clear that 'it is the claimant's functional capacity, not his clinical impairments, that the ALJ must relate to the [VE].'" *Mason v. Astrue*, Civil No. JKS-10-2157, 2013 WL 990399, at *4 (D. Md. 12 Mar. 2013) (quoting *Fisher v. Barnhart*, 181 Fed. Appx. 359, 364 (4th Cir. 2006)). "A claimant very well might have some impairments under control such that they do not manifest themselves in any way that would limit the claimant's capacity for work." *Fisher,* 181 Fed. Appx. at 364-65. Accordingly, the ALJ was not required to describe the specific nature of plaintiff's chronic headaches to the VE, but only any limitations resulting from them.

Moreover, while the ALJ found plaintiff to have the severe impairment of chronic headaches, she found plaintiff's subjective complaints with respect to the severity and frequency of them only partially credible, explaining as follows:

> The record . . . shows that [plaintiff's] chronic headaches have declined substantially on the medication, and [plaintiff] stated at the hearing that her new medication helped her headaches. In addition, results of an MRI of the brain done in 2009 [were] also unremarkable.

Tr. 24 ¶ 4. This finding is supported by substantial evidence. *See*, *e.g.*, Tr. 41, 49-50, 292, 457. Moreover, the ALJ's limitation of plaintiff to SRRT's in his RFC determination is responsive to her headache impairment to the extent that it interferes with her ability to concentrate.

For the foregoing reasons, the court rejects plaintiff's challenges to the ALJ's hypothetical.

### D. ALJ's Alleged Improper Rejection of the Opinions of Dr. Keenan

The ALJ gave "little weight" to the opinions of Dr. Keenan as plaintiff's treating rheumatologist. Tr. 24 ¶ 4. Although plaintiff does not challenge the ALJ's decision to give Dr. Keenan's opinions less than controlling weight, she asserts that the ALJ should have given them more than "little weight."

The rules regarding the weight to be accorded medical opinion evidence and the ALJ's duty to explain such weight are well established. The Regulations provide that opinions of treating physicians, including psychiatrists, on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques, and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 416.927(d)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (2 July 1996). The reason is that the treating sources are likely to be those "most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 416.927(d)(2). If the medical opinions of the treating source are not given controlling weight, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, and any specialization of the provider. *Id.* § 416.927(d)(2)-(6). An ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight

the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. § 416.927(d)(2). Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. § 416.927(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See id*. at *3.

Dr. Keenan, who began treating plaintiff in July 2009, completed an MSS on 11 January 2011 in which he indicated that plaintiff had certain physical limitations resulting from fibromyalgia, uveitis,[4] possible undifferentiated connective tissue disease,[5] and anxiety. (Tr. 475-80). The ALJ provided the following reasons for according little weight to Dr. Keenan's opinions in the MSS:

> [T]he undersigned finds the limitations reported by Dr. Keenan on January 11, 2011 to not be well supported by the record of evidence and his . . . opinion is given little weight. Dr. Keenan reported [plaintiff] was incapable of even a "low stress" job and had emotional factors that contribute to her limitations. He indicated that her pain interfered with her concentration and that she experienced side effects for her medication. Dr. Keenan indicated [plaintiff] could never lift and carry anything over 11 pounds, could only sit, stand or walk for 15 minutes before alternating her posture. Dr. Keenan reported [plaintiff] could never turn her head right or left, or stoop. [Plaintiff] was further limited to balancing [seldom], reaching [frequently], handling [seldom], and [never] fingering (Exhibit 20F). The undersigned does not find such severe limitations supported by the overall record evidence. There is no objective medical evidence of any significant deficit in [plaintiff's] musculoskeletal system (Exhibit 17F) and [plaintiff] testified she had no difficulty sitting. As denoted above, [plaintiff's] depression is well controlled by medication and [plaintiff's] joint and muscle pains have improved with medication. In addition, [plaintiff] testified her pain medication was effective for the fibromyalgia, and that her IBS was controlled by

---

[4] "Uveitis" is "swelling and irritation of the uvea, the middle layer of the eye." Def. of "Uveitis," Medline Plus, U.S. Nat'l Library of Medicine, http://www.nlm.nih.gov/medlineplus/ency/article/001005 htm (last visited 11 Oct. 2013).

[5] "Connective tissue disease" is a systemic autoimmune disease that affects connective tissue, such as cartilage and fat. *See* Def. of "Connective Tissue Disorders," Medline Plus, U.S. Nat'l Library of Medicine, http://www.nlm.nih.gov/medlineplus/connectivetissuedisorders html#cat42 (last visited 11 Oct. 2013).

10

Zyclomen. [Plaintiff] also testified her headaches had significantly declined since taking Topamax (Exhibit 18F).

Furthermore, the undersigned find[s] [plaintiff's] described wide-array of activities of daily living (including performing household chores, shopping and caring for three children, two of whom are disabled) to be inconsistent with the severe limitations reported by Dr. Keenan. Accordingly, the undersigned finds good cause to reject the January 11, 2011 limitations reported by Dr. Keenan as being neither bolstered nor supported by the overall record evidence, including his own treatment records.

Tr. 24-25 ¶ 4.

The court finds that this explanation by the ALJ meets the foregoing standards. It provides specific reasons for her attribution of little weight to Dr. Keenan's opinions, making clear the basis for her doing so, that are supported by substantial evidence of record.

At bottom, plaintiff's argument amounts to no more than an invitation for this court to reweigh the evidence with respect to Dr. Keenan's opinions and come to a different conclusion about the weight that should be accorded to them. Under the applicable standard of review, the court is not permitted to do so. *See Craig*, 76 F.3d at 589. Accordingly, the court rejects plaintiff's argument that the ALJ failed to give appropriate weight to Dr. Keenan's opinions.

### E. ALJ's Alleged Failure to Adequately Develop the Record Regarding the Severe Impairment of "Rule Out Borderline Intellectual Functioning"

Plaintiff next contends that the ALJ failed to adequately develop the record with respect to the severe impairment of "rule out borderline intellectual functioning" because the term "rule out" indicates that the ALJ did not determine whether or not plaintiff had borderline intellectual functioning. The ALJ therefore purportedly had an obligation to seek further information from which she could make a definitive determination about this impairment. The court disagrees.

Plaintiff is generally correct that, in the medical context, use of the phrase "rule out" indicates some evidence suggesting that an individual may meet the diagnostic criteria for a

particular medical condition, but that additional evidence is needed for a definitive diagnosis. *See, e.g., Young v. Astrue*, No. 1:12-cv-00317-MJD-RLY, 2013 WL 501752, at *1 n.2 (S.D. Ind. 8 Feb. 2013) ("'Rule out' in a medical record means that the disorder is suspected, but not confirmed—i.e., there is evidence that the criteria for a diagnosis may be met, but more information is needed in order to rule it out.'") (quoting *Byes v. Astrue*, 687 F.3d 913, 916 n.3 (8th Cir. 2012)); *Rizzo v. Colvin*, Civ. Act. No. 12-88-DLB, 2013 WL 1345348, at *3 (E.D. Ky. 1 Apr. 2013) ("In the medical context, this phrase ["rule out"] simply means a diagnosis which is possible, but not yet established."). But whether there was sufficient evidence to support a definitive diagnosis was not pertinent to the findings that the ALJ was required to make at step two. Rather, the ALJ was required to determine plaintiff's "severe impairments." 20 CF.R. § 416.920(c). An impairment is considered severe within the meaning of the Regulations if it imposes more than a minimal limitation on a claimant's physical or mental ability to do basic work activities. *See* Soc. Sec. Ruling 85-28, 1985 WL 56856, at *3 (1 Jan. 1985) (providing that an impairment is not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered"); *see also* 20 CF.R. § 416.920(c) (providing that an impairment is severe only if it "significantly limits . . . [a claimant's] physical or mental ability to do basic work activities"). Thus, by including "rule out borderline intellectual functioning" in her findings on plaintiff's severe impairments at step two, the ALJ was indicating that she found that plaintiff exhibited symptoms consistent with borderline intellectual functioning that caused more than a minimal impact on plaintiff's ability to work. The ALJ's reliance on the "rule out" formulation at step two was therefore not erroneous.[6]

---

[6] As a general matter, a medical diagnosis is not the polestar of disability determinations, but rather the impact of a

Although plaintiff appears to limit her argument to step two, the court finds that the ALJ did not otherwise fail to develop the record adequately regarding plaintiff's intellectual functioning. "[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). A case must be remanded for failure to develop the record only "[w]here the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant." *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980). The record is adequately developed when it enables the ALJ to make a determination whether the claimant is disabled that is supported by substantial evidence. *See, Skinner v. Astrue*, 478 F.3d 836, 843-44 (7th Cir. 2007) (holding that the record is not incomplete where the evidence in the case is adequate to allow the ALJ to determine whether a claimant is disabled).

Here, there was sufficient evidence before the ALJ to enable her to fully evaluate plaintiff's intellectual functioning in making a determination of disability. Specifically, the ALJ had available for her review on this issue the records of plaintiff's treating psychiatrist, Prasad Degala, M.D.; a report from examining psychological consultant, Edmund Burnett, Ph.D.; the mental RFC assessment of Bonny Gregory, M.D.; and plaintiff's own testimony. The ALJ adequately discussed this evidence. For example, the ALJ noted that Dr. Burnett diagnosed plaintiff with depression and "rule-out" borderline intellectual functioning (Tr. 19-20 ¶ 4) and that Dr. Degala concluded that plaintiff was functioning on an average level of intellect (Tr. 19 ¶

---

medical impairment on an individual's functional abilities is. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (holding that the diagnosis of a condition, alone, is insufficient to prove disability, because there must also be "a showing of related functional loss"); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis . . . says nothing about the severity of the condition.").

13

Case 4:12-cv-00237-D   Document 26   Filed 10/11/13   Page 13 of 18

4). The ALJ further discussed the findings of Dr. Gregory that plaintiff had "some verbal and academic deficits, especially in abstract and math reasoning," but that this was "consistent with her early departure from school due to pregnancy." Tr. 19 ¶ 4. The ALJ also discussed plaintiff's testimony, finding that "[s]he can do simple math, but does not read a lot" and noting her statement that "she only completed the 8th grade and tried to get her GED but did not finish." Tr. 19 ¶ 4. The ALJ manifestly took plaintiff's intellectual capacity into account in his RFC determination by limiting her to SRRT's. Plaintiff has not shown, or even alleged, how the status of development of the record with respect to plaintiff's intellectual functioning was prejudicial to her. *See, e.g.*, *Zook v. Comm'r of Soc. Sec.*, No. 2:09cv109, 2010 WL 1039456, at *4 (E.D. Va. 25 Feb. 2010) ("If a plaintiff fails to show that he/she was prejudiced by the ALJ's failure to develop the record, remand is not warranted.").

For the foregoing reasons, the court concludes that the ALJ did not err with respect to development of the record regarding plaintiff's intellectual functioning. It accordingly rejects this challenge to the ALJ's decision.

### F. ALJ's Alleged Failure to Obtain an MSS from Dr. Deans

Finally, plaintiff asserts that the ALJ was obligated to obtain an MSS from Dr. Deans, a neurologist who treated plaintiff for chronic headaches, and erred by failing to do so. The court finds no error.

The duty to develop the record includes assisting the claimant in obtaining medical reports from the claimant's medical sources when the claimant permits, as well as recontacting a medical source when the evidence received from it does not enable the ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 416.912(d), (e). ALJ's are generally required to request that acceptable medical sources provide as part of their medical reports an MSS, which

14

Case 4:12-cv-00237-D   Document 26   Filed 10/11/13   Page 14 of 18

is defined as a statement "about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis." Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *4 (2 July 1996); *see also* 20 C.F.R. § 416.913(b)(6) (stating that medical reports from acceptable medical sources "should include . . . [a] statement about what [the claimant] can still do despite [his] impairment(s)").

However, the absence of an MSS does not, in itself, render a medical report incomplete. 20 C.F.R. § 416.913(b)(6) ("Although [the Commissioner] will request an [MSS] about what [a claimant] can still do despite [his] impairment(s), the lack of the [MSS] will not make the report incomplete."). As noted, a case must be remanded for failure to develop the record only "[w]here the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant." *Marsh*, 632 F.2d at 300. "Prejudice can be established by showing that additional evidence would have been produced . . . and that the additional evidence might have led to a different decision." *Ripley v. Chater*, 67 F.3d 552, 557 n.22 (5th Cir. 1995). "If a plaintiff fails to show that he/she was prejudiced by the ALJ's failure to develop the record, remand is not warranted." *Zook*, 2010 WL 1039456, at *4.

Here, plaintiff asserts only summarily that plaintiff was prejudiced by the ALJ's failure to obtain an MSS from Dr. Deans and has failed to demonstrate, or even allege, that inclusion of further documentation from Dr. Deans would have affected the ALJ's determination of the case. *See Gatling v. Astrue*, No. 2:11-CV-21-FL, 2012 WL 4359435, at *5 (E.D.N.C. 28 June 2012) (mag. judge's rep. & recommendation) (finding no error in the absence of an MSS from claimant's treating physician on the grounds that claimant failed to demonstrate how further information from the treating physician might have changed the ALJ's determination), *adopted*,

Case 4:12-cv-00237-D   Document 26   Filed 10/11/13   Page 15 of 18

2012 WL 4357013 (21 Sept. 2012). Moreover, there was clearly sufficient evidence before the ALJ to enable her to fully evaluate plaintiff's headaches and otherwise make a determination on whether plaintiff was disabled, notwithstanding the lack of an MSS from Dr. Deans. *See, e.g., Skinner*, 478 F.3d at 843-44 (holding that the ALJ did not err by failing to request an MSS because the evidence in that case was adequate to determine whether the claimant was disabled and the ALJ's "decision not to obtain an MSS . . . did not render the record incomplete").

It is plainly evident from the decision that the ALJ carefully reviewed the records with respect to the effects of plaintiff's chronic headaches on her ability to work, including those from Dr. Deans and plaintiff's own testimony and statements. This review is evidenced by the following detailed discussion:

> Dr. Deans diagnosed [plaintiff] with mixed tension and migraine headache disorder with some occipital neuralgia. She is currently taking Topamax 50 mg and has been essentially headache free. He indicated she is doing quite well with regard to her migraines. Finally, a MRI taken on June 20, 2009 of the brain was unremarkable and age appropriate, and the medical record notes no evidence of any central nervous system vasculitis, stroke or intracranial pressure or other primary neurological disorder. He noted in an evaluation performed on February 17, 2010, that she had a lot of somatic symptoms for which no objective cause will be found (Exhibits 5F, 10F, 12F, and 18F).
>
> On November 22, 2010, Dr. Deans indicated in his progress notes that [plaintiff's] headaches have declined substantially on Topamax, which is taken 100 mg 1 in the morning and 1.5 in the evening. She still has a headache maybe 2 days a week compared to about 5 days before. Furthermore, [plaintiff] testified at the hearing she has a newer medication for headaches and it helps. She states that she now has headaches twice per week instead of three or 4 times per week (Exhibits SF, 10F, 12F, and 18F).

Tr. 22 ¶ 4. The ALJ gave "considerable weight" to the findings by Dr. Deans in his progress notes "show[ing] a substantial decline in [plaintiff's] headaches with medication." Tr. 24 ¶ 4.

Further, determination of the extent to which the frequency of and the pain from plaintiff's headaches limits her functional capacity is dependent in large part on plaintiff's

16

subjective reports. As discussed above, the ALJ found plaintiff's subjective complaints with respect to headaches only partially credible. *See* Tr. 22 ¶ 4.

For the foregoing reasons, the court concludes that there is substantial evidence of record supporting the ALJ's determination with regard to plaintiff's chronic headaches. *See Ripley*, 67 F.3d at 557 ("In a situation . . . where no medical statement has been provided, [the court's] inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record."). Accordingly, the court concludes that the ALJ did not err in failing to request an MSS from Dr. Deans and rejects this challenge to the ALJ's decision.[7]

## III. CONCLUSION

For the foregoing reasons, the final decision of the Commissioner is supported by substantial evidence and conforms to the applicable legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion for judgment on the pleadings (D.E. 23) be ALLOWED, plaintiff's motion for judgment on the pleadings (D.E. 21) be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have until 25 October 2013 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

---

[7] Additional arguments made by plaintiff in the course of asserting her principal contentions, as reviewed herein, are meritless based on the principles discussed and do not warrant separate discussion.

This, the 11th day of October 2013.

/s/ James E. Gates
James E. Gates
United States Magistrate Judge